## LAUDEN HOUSE, ALIAS BUDDY HOUSE, v. THE STATE.

No. 17478.   Delivered March 13, 1935.
Rehearing Denied May 1, 1935.

The opinion states the case.

*E. Newt Spivey,* of Texarkana, and *Cooper & Baker,* of Henderson, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was tried and convicted

of the offense of murder, and his punishment was assessed at confinement in the state penitentiary for a term of 30 years.

The testimony adduced by the State upon the trial showed that the appellant was working for Mr. Meeks in a cafe at Carlisle in Rusk County. It is shown that the deceased entered the cafe at about 7:30 p. m., and said to Mr. Meeks, "Red, I thought you were my friend." Mr. Meeks replied, "I am. What have I done to you?" At this time the appellant said, "We are your friends. What have we done to you?" whereupon the deceased remarked, "You keep your mouth shut." The appellant then went behind the counter, picked up a can of tomato soup and a glass and threw them at the deceased, hitting him, and when deceased picked up a stool the appellant ran out of the back door of the cafe. Deceased then went to the kitchen looking for the appellant but in a few minutes returned and went out the front door of the cafe. At about this time the appellant had returned to the cafe, coming in the back door with a gun. He went to the front door and shot the gun straight up and then came back through the cafe and again went out of the back door. After the deceased had come back into the cafe and was sitting on a stool, the appellant returned to the cafe with a gun and struck the deceased with it, knocking him from the stool, and after the deceased had fallen upon the floor the appellant shot him, from the effects of which he died. Deceased was a young man about 24 years of age, weighing about 165 pounds, and was an amateur prize fighter. The appellant was about 20 years of age and weighed about 130 pounds. The appellant's version of the difficulty is substantially as follows: Martin (the deceased) was talking and laughing about a certain woman being gone, and when appellant remarked, "I think I saw Dallas back in town today," and winked at one of the boys in the cafe, the deceased jumped from his chair, advanced toward appellant, and said, "None of your smart remarks," whereupon appellant picked up a can of tomato soup, threw it at deceased, and ran out of the back door with the deceased following him; that appellant ran into the picture show from where he went to a friend's home, procured a gun, and returned to the cafe. At the time he returned to the cafe the deceased was in front of the cafe talking to Mr. Meeks, but in a very short time he came back into the cafe and grabbed at the appellant over the counter; he then picked up a stool and raised it to strike appellant and when he did so appellant shot him; that he shot him to protect himself.

The first contention made by the appellant in his brief is that inasmuch as the indictment charged that appellant unlaw-

fully and with malice aforethought killed Damon Martin, that the court should not have instructed the jury upon the law of a voluntary homicide and should not have defined the word "voluntary" in his charge. We have examined the appellant's objections to the court's main charge but fail to find any objection which even remotely refers to the matter complained of in his brief, and therefore we can not consider the same. However, if appellant had objected to the court's charge at the proper time and in proper manner, this court could not have sustained his contention because an averment in an indictment of an unlawful killing with malice aforethought includes a voluntary killing. See Landers v. State, 25 S. W. (2d) 868.

By bill of exception No. 2 appellant complains of the action of the trial court in permitting the State to prove by Corbin Winn that one D. C. Meeks made the following statement to him in front of the cafe preceding the killing of deceased by the appellant: "He (the defendant) is in the back of the cafe now and he is going to kill him." The ground of objection urged was that it was not admissible either as original evidence or under the guise of impeachment of D. C. Meeks; that it was a statement of a third person who was not connected with the homicide and that it was not made in the presence or hearing of the defendant. The court in his qualification to the bill states that he does not certify that the defendant did not hear the remark of Meeks before the shooting and he does not certify that Meeks had no connection with the killing; that Meeks owned the cafe and appellant was a cousin of Meeks. As we view the qualification of the court, it does not impair or negative the matters set forth in the bill of exception. There is no testimony which in any way connected the witness Meeks with the killing, nor was it shown that appellant heard the remarks attributed to the witness Meeks. However, it appears from the record that the witness Meeks on cross-examination testified without objection on the part of the appellant as follows: "I thought there would be trouble when I tried to get Martin to leave because there had been a fight and they were looking for each other. I know a man they call Pop-eye but I don't know whether that is Corbin Winn or not. I did not tell him that House is going to kill him because I did not have time as it was done so quick." That a fight had taken place between appellant and deceased a few minutes before appellant killed deceased was not controverted; that appellant ran out of the cafe but soon returned with a gun is not controverted, and if they were looking for each other, as testified to by Meeks, it shows that the

appellant as well as deceased was determined to renew the difficulty with more serious consequences. The jury knew from the testimony of the prior difficulty. The jury knew that the appellant had returned with a gun and the jury also knew that the appellant was seeking the deceased with a view of renewing the difficulty with more serious consequences and that as soon as deceased appeared the appellant killed him. It occurs to us that in view of all of this testimony, even though it be conceded that it was but an expression of opinion of the witness Meeks, it is not of such prejudicial nature as requires a reversal of this case.

In his motion for new trial the appellant urged various reasons why the court should grant the same, but in the absence of any exception to the trial court's action in overruling the same, this court would not be authorized to review the action of the trial court.

No reversible error appearing in the record, the judgment of the trial court is in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—We were mistaken in saying in our original opinion that appellant came back into the cafe with a shotgun and struck deceased with it, and then shot him. The weapon used by appellant in the difficulty was a pistol, but it was repeatedly referred to by all the witnesses as "a gun," and only finally shown to be a pistol. We fail to see how the inadvertence could have injured appellant's cause. However, the original opinion will be corrected so as that the word "shot" will be withdrawn before the word "gun."

Renewed complaint is made by appellant of admission of testimony as to the statements of Meeks as he ran out of the cafe, viz: "He is in the back of the cafe now and he is going to kill him," he,—referring to appellant. Mr. Branch in section 87 of his Annotated P. C. cites authorities supporting the following statement: "If the statements of a third person were a part of the transaction, and go to illustrate the feelings, motives and acts of the principal actors, proof of same is admissible."

Meeks,—the defense witness to whom the statement so ob-

jected to was attributed,—testified that he was in the cafe when appellant came back with a pistol. Appellant was in the rear of the cafe with his pistol when deceased came in at the front door, and, according to this witness, asked where appellant was. Meeks testified that he was up in front, and further said: "I went out and stayed out." He gave as his reason for not telling Corbin Winn,—as Winn testified he did,—that appellant was in the back and was going to kill deceased, "Because I did not have time, as it was done so quick." This witness also testified he knew they were looking for each other. We think the statement of Meeks certainly shed light upon the acts and motives of appellant. The shooting occurred almost as soon as Meeks ran out of the cafe. We are constrained to adhere to our former conclusion that no error appears in admitting this testimony.

The motion for rehearing will be overruled.

*Overruled.*